NANCY J. JOHNSON, CA STATE BAR NO. 111615
CHRISTIAN E. PICONE, CA STATE BAR No. 218275
BERLINER COHEN
TEN ALMADEN BOULEVARD
ELEVENTH FLOOR
SAN JOSE, CALIFORNIA 95113-2233
TELEPHONE: (408) 286-5800
FACSIMILE: (408) 998-5388
nancy.johnson@berliner.com
christian.picone@berliner.com

ATTORNEYS FOR CROSS-DEFENDANT STEWART TITLE OF
CALIFORNIA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FLAGSTAR BANK, FSB, A FEDERALLY CHARTED SAVINGS BANK,<br><br>Plaintiff,<br><br>v.<br><br>THE LOAN EXPERTS CORPORATION, d/b/a ALL AMERICAN FINANCE, a California corporation, HORMOZ NAZARI, an individual, ELIZABETH CORTEZ PADILLA, an individual, 1350 ESCONDIDO COASTAL, LLC, a California limited liability company, WESTLAKE COASTAL, LLC, a California limited liability company, VCH-SALINAS 1, LLC, a California limited liability company, ALLSTAR APPRAISALS, INC., a California Corporation, JAMES MAY, an individual, STEWART TITLE OF CALIFORNIA, a California corporation,<br><br>Defendants.<br><br>AND RELATED CROSS-ACTION. | CASE NO.  C10-3190 CRB<br><br>CROSS-DEFENDANT STEWART TITLE'S MOTION IN LIMINE NO. 2 TO PRECLUDE CERTAIN TESTIMONY OF MR. SUAGARMAN AND ANY OTHER EXPERT WITNESS REGARDING HEARSAY STATEMENTS MADE BY ALLEN NAZARI |

///

///

///

\CEP\1064504.1
091312-13139033

I.   INTRODUCTION

Cross-Defendant Stewart Title of California, Inc. (Stewart Title) hereby moves for an *in limine* order to exclude Cross-Claimant The Loan Experts Corporation's ("TLE") designated expert Randy Sugarman and other expert witnesses from (a) testifying about the content of conversations that Allen Nazari (TLE's principal) purportedly had with Flagstar Bank employee Joseph Lathrop, or conversations with anyone else from Flagstar Bank, and (b) mentioning or considering such communications as support for expert opinions.  Mr. Lathrop is not expected to testify at trial and was not deposed.  Testimony from any non-expert witness about statements made by Mr. Lathrop at any time would be inadmissible under the hearsay rule, and TLE may not circumvent that rule by having its experts offer the hearsay evidence.  Although under some circumstances experts may rely on hearsay, those circumstances do not exist here.  Further, the anticipated hearsay statements from Mr. Lathrop are more prejudicial than probative.

II.   RELEVANT FACTS

TLE was a mortgage banker which, at the beginning of 2008, had a warehouse line of credit with Flagstar Bank as its lender.  TLE used that line of credit to obtain funds to close loans made to borrowers secured by residential real property, with TLE as the lender.  Very soon after the loan closed, TLE would sell the loan to another lender (usually Flagstar Bank) and funds from that loan sale transaction would then repay the draw on the warehouse line of credit.  In June and July 2008, TLE originated a series of loans which were closed through escrows at Stewart Title.  The loans were part of a straw buyer loan fraud scheme, and a Stewart Title escrow officer provided some assistance in facilitating the scheme.  Through this action, TLE claims that Flagstar Bank terminated its warehouse line of credit after, and because of, the discovery of fraud in at least one loan transaction.  TLE further claims that the loss of the warehouse line caused it to go out of business.  It has sued Stewart Title for fraud, seeking to hold Stewart Title responsible for the lost profits it asserts it would have achieved had Flagstar Bank not terminated the warehouse line of credit.

Evidence in this case includes a letter signed by Joseph Lathrop from Flagstar Bank dated April 2, 2008 notifying TLE that Flagstar Bank was terminating the warehouse line of credit due

1   to financial losses TLE had experienced in 2007 and "high lock fallout," which is a term

2   referring to TLE's failure to deliver loans to Flagstar Bank after registering the loan with

3   Flagstar Bank before funding.  That letter was sent month a *before* the origination of the straw

4   buyer loans, and several months before any suspicion of fraud.  The April 2, 2008 letter and

5   related evidence establish that the termination of the line of credit could not possibly have been

6   precipitated by the submission of those loans to Flagstar Bank.  Moreover, Flagstar Bank's stated

7   reasons for the termination have nothing to do with fraudulent loans or Stewart Title.  This

8   evidence undermines TLE's entire theory against Stewart Title, yet TLE persists in its claims.

9        During the course of expert discovery, TLE produced a report from expert Randy

10  Sugarman who is a consultant in the area of lost profits and damages.  In addition, Mr. Sugarman

11  testified at a deposition.  Mr. Sugarman opined about "the reasonable value of the loss of net

12  income sustained by TLE for the period of August 2008 through 2013 assuming TLE had

13  continued in business rather than ceasing business as a result of losing their warehouse line with

14  Flagstar Bank and having been falsely accused of committing fraud."   In addressing that

15  particular opinion, Mr. Sugarman referenced telephone conversations that Mr. Nazari claimed

16  that he had with Joseph Lathrop (the author of the April 2, 2008 termination notification letter)

17  about the termination of the warehouse line of credit.  Mr. Sugarman uses the content of the

18  vague and self-serving conversations Mr. Nazari told him about as support for opinions he

19  expressed in his report and later at his deposition.

20       For the reasons discussed below, Mr. Sugarman should be precluded from testifying

21  about double and sometimes triple hearsay conversations between Mr. Nazari and Mr. Lathrop,

22  and both Mr. Sugarman and the other experts should be precluded from relying on those

23  conversations (or any other similar conversations with Flagstar Bank representatives) as support

24  for any expert opinions expressed at trial.

25  ///

26  ///

27  ///

28  ///

\CEP\1064504.1
091312-13139033

III.   **TESTIMONY ABOUT MR. NAZARI'S CONVERSATIONS WITH MR. LATHROP EXCEEDS THE BOUNDS OF PERMISSIBLE EXPERT DISCOVERY**

Under Federal Rule of Evidence 703, experts may rely on inadmissible evidence (e.g., hearsay) only in certain circumstances, which were described by the Ninth Circuit as follows:

> In December 2000, Rule 703 was amended and now requires a court to ask two questions when evaluating otherwise inadmissible evidence. The first question is 'whether the facts are of a type reasonably relied on by experts in the particular field.' [Citation.] The second question is whether the probative value of the underlying data substantially outweighs its prejudicial effect. [Citation.]

Turner v. Burlington Northern Santa Fe Railroad Co., 338 F.3d 1058, 1061-62 (9th Cir. 2003). In Turner, the expert (Howard) sought to testify that a fire was caused by arson based on hearsay—i.e., a lab report showing that one of the "debris samples contained a mixture of petroleum distillate consistent with gasoline." Turner, 338 F.3d at 1060. The district court excluded the evidence "because Howard relied on the lab report as substantive evidence to prove that the fire was started by gasoline." Id. The Ninth Circuit affirmed the exclusion stating:

> The lab report was the only evidence of gasoline in the soil. Howard used the report not as data upon which an expert in his field would reasonably rely in forming an opinion, but rather intended to use it as substantive evidence of his ultimate conclusions that the fire was intentionally created by pouring gasoline into the soil. The lab report was otherwise inadmissible hearsay evidence in the absence of foundation testimony by the laboratory that conducted the testing. The prejudice that would result from admission of this evidence was substantial, whereas its probative value was minimal. Because the probative value of this otherwise inadmissible evidence does not outweigh its prejudicial effect, our inquiry is ended under [F.R.E. Rule 703].

Id. at 1062.

In determining whether the evidence is "reasonably relied upon by experts in the particular field," reliance on biased witnesses (e.g., party litigants) subjects the opinions to "common-sense skepticism," which results in their exclusion. See Munoz v. Orr, 200 F.3d 291, 301-2 (5th Cir. 2000) ("Dr. Benz relied on the plaintiffs' compilations of data, which gives rise to a 'common-sense skepticism' regarding the expert's evaluation, [citations], and did not seek to verify the information presented to him. [Citation.]"). See also Dukes v. Wal-Mart, Inc., 222

1  F.R.D. 189, 196-198 (N.D. Cal. 2004) (district court struck expert affidavit that was based on

2  defendant's counsel's survey of defendant's employees' hiring and pay practices); Gong v.

3  Hirsch, 913 F.2d 1269, 1272 (7th Cir. 1990) (in survivor action, court applied Rule 703 to

4  exclude reliance on evidence where "the likely source of the information was the decedent

5  himself."); Dallas v. Mavis Forwarding Co., Inc. v. Stegall, 659 F.2d 721, 722 (6th Cir. 1981)

6  ("The trial process is better served when a biased eyewitness declarant is required to testify

7  directly and to be subject to cross-examination. To permit his opinion to be heard through the

8  testimony of an official would cloak it with undeserved authority that could unduly sway a

9  jury.")  Mr. Nazari's report to TLE's experts about conversations with Flagstar representatives is

10 inherently unreliable and as such is subject to exclusion under concepts expressed in Daubert v.

11 Merrill Dow Pharms., Inc., 509 U.S. 579, 588 (1993) and Kumho Tire Co., Ltd. v. Carmichael,

12 526 U.S. 137, 147 (1999) (trial courts are gatekeepers with regard to admission of expert

13 testimony to ensure that such testimony is both relevant and reliable.)

14
15      Here, TLE, through use of an expert, seeks to introduce Mr. Nazari's alleged rendition of

16 conversations that he told TLE's experts he had with Mr. Lathrop as evidence that Flagstar did

17 not mean what it said in its April 2, 2008 letter, and to create evidence that the termination of the

18 warehouse line occurred later, and for different reasons than those stated in Flagstar's written

19 communications to TLE.   There is no exception to the hearsay rule to make Mr. Lathrop's

20 comments to Mr. Nazari admissible so Mr. Nazari will not be able to testify about them.  Mr.

21 Lathrop's purported statements should not be disclosed through expert testimony as a basis for

22 his opinion because they are not the type of factual statement on which a lost profit and damages

23 expert would rely to form opinions about lost profits.   It would be prejudicial to allow this type

24 of evidence because it is clearly intended to contradict key evidence that establishes the lack of

25 proximate causation between any conduct by Stewart Title and TLE's loss of its warehouse line

26 of credit.  There is no admissible evidence that Flagstar ever rescinded the termination decision it

27 announced through its April 2, 2008 letter, or that Flagstar's stated reasons for termination were

28 other than the reasons it stated.  Unless the hearsay statements from Mr. Lathrop are accepted as

\CEP\1064504.1
091312-13139033

1    fact the statements have no probative value whatsoever.  In <u>Turner</u> the Court found there was no

2    probative value of the laboratory report finding gasoline in the soil unless the results were taken

3    as true, and the same rationale applies in this case.  Testimony about conversations with Mr.

4    Lathrop would be inadmissible if Mr. Nazari sought to introduce them, and that exclusion may

5    not be circumvented through the testimony of Mr. Sugarman or any other expert.

6    IV.    CONCLUSION

7          For the reasons expressed above, Stewart Title requests an *in limine* order to exclude

8    TLE's designated expert Randy Sugarman and other expert witnesses from (a) testifying about

9    the content of conversations Mr. Nazari purportedly had with Flagstar Bank employee Joseph

10   Lathrop, or conversations with anyone else from Flagstar Bank, and (b) mentioning such

11   communications as a basis for expert opinions.

12   DATED:  SEPTEMBER 14, 2012              BERLINER COHEN

13

14                                          BY:  /S/CHRISTIAN E. PICONE
                                                 NANCY J. JOHNSON
15                                               CHRISTIAN E. PICONE
                                                 ATTORNEYS FOR CROSS-DEFENDANT STEWART
16                                               TITLE OF CALIFORNIA, INC.

17

18

19

20

21

22

23

24

25

26

27

28

MARK B. FREDKIN, ESQ. (SBN 53550)
DAVID A. KAYS, ESQ. (SBN 120798)
FREEDA Y. LUGO, ESQ. (SBN 244913)
MORGAN, FRANICH, FREDKIN & MARSH
99 Almaden Boulevard, Suite 1000
San Jose, California  95113-1613
Telephone: (408) 288-8288
Facsimile:  (408) 288-8325

Attorneys for Cross-Claimants
HORMOZ NAZARI and THE LOAN EXPERTS
CORPORATION

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLAGSTAR BANK, FSB a Federally Chartered Savings Bank,<br><br>              Plaintiff,<br><br>vs.<br><br>THE LOAN EXPERTS CORPORATION, d/b/a ALL AMERICAN FINANCE, a California Corporation, HORMOZ NAZARI, an individual, ELIZABETH CORTEZ PADILLA, an individual, 1350 ESCONDIDO COASTAL, LLC, a California limited liability company, WESTLAKE COASTAL, LLC, a California limited liability company, VCH-SALINAS 1, LLC, a California limited liability company, ALLSTAR APPRAISALS, INC., a California Corporation, JAMES MAY, an individual, STEWART TITLE OF CALIFORNIA, a California corporation,<br><br>              Defendants.<br><br>AND RELATED CROSS-ACTION. | Case No. 10-cv-03190-CRB<br><br>**CROSS-CLAIMANTS THE LOAN EXPERTS CORPORATION AND HORMOZ "ALLEN" NAZARI'S OPPOSITION TO STEWART TITLE'S MOTION IN LIMINE NO. 2 TO PRECLUDE CERTAIN TESTIMONY OF MR. SUGARMAN AND ANY OTHER EXPERT WITNESS REGARDING HEARSAY STATEMENTS MADE BY ALLEN NAZARI**<br><br>**(Motion in Limine No. 2)**<br><br>Trial Date:    October 15, 2012<br>Courtroom:   6<br>Judge:        Hon. Charles R. Breyer |

0

## I.     INTRODUCTION

Similar to Stewart Title's Motion in Limine number 1, there are vague factual references to Mr. Nazari's statements, incomplete factual recitation of the reasons those statements were recited, no analysis as to the issues on which such statements may be relevant and a cursory legal analysis to support the vague request for a Motion in Limine. In this motion Cross-Defendant does not cite specific testimony that it purports to find offensive.    A review of the deposition transcript of Cross-Claimants' expert Randy Sugarman would show that the references to Mr. Nazari's conversation with R. Joseph Lathrop were elicited by defendant's questioning.   In fact, Mr. Sugarman, who is a damage expert, is providing damage computations that assume that Mr. Nazari was put out of business by Stewart Title's wrongful conduct.  His opinions do not necessarily rely on Mr. Nazari's recitations of his conversation with Mr. Lathrop.   TLE's contention is that it was put out of business as a result of the fraud in which Stewart Title was an active participant. If that is found to be true, Mr. Sugarman has calculated the amount of lost profit damages suffered by TLE.  Thus, from the standpoint of Mr. Sugarman's testimony, this Motion in Limine is irrelevant.

As to other experts' statements concerning Nazari's conversation with Mr. Lathrop, cross-defendant gives no context within which the Court can make a determination as to what Stewart Title seeks and whether there are or are not reasons for Nazari's statements to be admitted.  Without more context, Cross-Claimants cannot fully provide the Court with opposing points and authorities, and just as important, this Court has nothing upon which to make a reasoned conclusion on whether such a hearsay objection should or should not be sustained.

## I.     ARGUMENT

Federal Rule of Evidence 703 specifically allows experts, in reaching their opinions, to rely on facts outside the record and not personally observed, but of the kind that experts in his or her field rely on in forming opinions. Fed. R. Evid. 703.  Once the

1  court determines that the facts are of a type reasonably relied on in the particular field, the

2  second question is whether the probative value of the underlying data substantially

3  outweighs its prejudicial effect.  *Id.*  The second prong of Federal Rule of Evidence 703

4  ("Rule 703"), which refers to whether the data is more probative than prejudicial, relates to

5  jury trials and does not apply to bench trials: Rule 703 states, "Facts or data that are

6  otherwise inadmissible shall not be disclosed **to the jury** by the proponent of the opinion

7  or inference unless the court determines that their probative value **in assisting the jury** to

8  evaluate the expert's opinion substantially outweighs their prejudicial effect."  Fed. R.

9  Evid. 703; *Williams v. Illinois*, ___U.S. ____, 132 S. Ct. 2221, 2234-2235 (2012) (" In

10  bench trials . . . the Federal Rules places no restriction on the revelation of such

11  information to the factfinder.").

12      Rule 703 specifically allows experts to render opinions, even if based on hearsay.

13  *See Valley Forge Ins. Co. v. Zurich Amer. Ins. Co.*, Case No. C 09-2007 SBA, 2012 U.S.

14  Dist. LEXIS 8378 at *7 (N.D. Cal. 2012) (objection to expert testimony based on hearsay

15  "is without merit"); *accord Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579,

16  595 (1993) (Rule 703 permits experts to render opinions based on hearsay so long as the

17  hearsay is of the type reasonably relied on by experts in that field).  As stated above, Mr.

18  Sugarman formed his opinion as an expert in lost profits and damages using the

19  assumption that the fraud committed by Stewart Title damaged The Loan Experts and

20  made it impossible for it to continue business.

21      Not only did the fraud cost TLE its warehouse line of credit and the correspondent

22  relationship with Flagstar, but it also foreclosed TLE from getting a warehouse lending

23  facility from *any other* credit source.  The reason why TLE could not get another

24  warehouse line is because any application for a new line of credit required a disclosure by

25  TLE of the circumstances surrounding TLE's loss of credit with Flagstar.  On several

26  occasions, Mr. Lathrop told Nazari that it was the fraudulent loans that caused Flagstar to

27  terminate TLE's warehouse line of credit.  Other evidence that confirms that Mr. Lathrop

28

1  told this to Nazari is that Flagstar submitted negative reports to the Mortgage Asset

2  Research Institute ("MARI") in October 2008, and in fact, sued TLE for fraud.  As Nazari

3  applied for other lines of credit after Flagstar, he would have to relate the reasons that he

4  lost the Flagstar line.  Nazari would have to relate the fact that he lost the Flagstar line

5  because of accusations that TLE was involved in the fraud.  As will be pointed out by the

6  testimony of Cross-Claimants' expert Michael McAuley, in 2008, the stigma of being

7  accused of taking part in a fraudulent scheme was the death knell of any chance of TLE

8  obtaining any line of credit.  The fact that such statements would need to be disclosed will

9  be addressed by Mr. McAuley in his testimony.

10       Mr. Lathrop's statements to Mr. Nazari is not hearsay at all if offered for a purpose

11  other than to prove the truth of the matter stated.  First, Mr. Lathrop's statements will be

12  offered to show Mr. Lathrop's state of mind as it existed in 2008 when TLE's warehouse

13  line was terminated.  *See Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 694-95 (7th Cir.

14  2011) (loan officer's statement regarding approval of home-equity loan was not an

15  assertion of a factual matter but a statement describing the bank's collective intentions and

16  did not constitute hearsay, and in any event, exception to hearsay rule for then-existing

17  state of mind would have also applied); *see also* Fed. R. Evid. 803(3).   This same

18  information will also be offered to show Mr. Nazari's state of mind in 2008 when Mr.

19  Lathrop told him that the reason his warehouse line of credit was terminated was because

20  of suspicion of fraud.  Nazari's state of mind, which was generated by his conversations

21  with Mr. Lathrop, is absolutely relevant because it shows what Nazari had to disclose to

22  new, prospective lenders.  Second, Mr. Lathrop's statements are not hearsay when offered

23  to show that in 2008, Mr. Nazari was told by Mr. Lathrop that TLE's warehouse line of

24  credit was terminated because of suspicion of fraud, which was a material fact that had to

25  be disclosed when TLE sought a new warehouse line, and directly impacted TLE's ability

26  to stay in business.  Third, Mr. Nazari can testify to his conversations with Mr. Lathrop

27  and those statements do not constitute hearsay if it is consistent with his prior testimony

28

1  and is offered to rebut the charge that these conversations did not occur.  The fact that

2  Nazari has consistently maintained what he was told by Mr. Lathrop is relevant to both the

3  state of mind exception and, of course, can also be offered as a prior consistent statement

4  given the defendants' views that Mr. Lathrop made no such statements.  The fact that

5  Nazari has recited the conversation to a third party would reflect a prior consistent

6  statement made by Nazari concerning the contested Lathrop conversations.  In addition,

7  Nazari's statements regarding his conversations with Mr. Lathrop are also relevant to

8  Nazari's credibility.

9         Given the lack of detail provided, Cross-Claimants respectfully request that the

10  Court deny this motion in limine.  Stewart Title fails to present any arguable reason why

11  Mr. Sugarman cannot rely on Mr. Nazari's factual account when calculating TLE's lost

12  profits.  As to experts other than Mr. Sugarman, Stewart Title provides no information

13  regarding why that information should be excluded, and therefore, this motion should also

14  be denied.  There are numerous reasons that Mr. Nazari's statements regarding his

15  conversations with Mr. Lathrop for which those statements could be offered, and a

16  sweeping assertion that no expert may include those facts in his or her testimony or as a

17  basis of their opinion without a specific reason why not is prejudicial to Cross-Claimants.

18  Obviously, if more cogent objections are made by Stewart Title as evidence is offered, the

19  Court will have much more detail to consider when ruling.

20

21  Dated: September 24, 2012            MORGAN, FRANICH, FREDKIN & MARSH

22

23                                     By: _____

24                                         FREEDA Y. LUGO
                                           Attorneys for Cross-Claimants
25                                         *Hormoz Nazari and The Loan Experts*
                                           *Corporation*

26

27

28